1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

10  | JUDY SINGLEY, individually and as        NO. 3:09-CV-05443 RBL
    | Guardian for DANA LOUISE
11  | SINGLEY,                                 **STATE OF WASHINGTON'S**
    |                                          **MOTION FOR SUMMARY**
12  |                    Plaintiffs,           **JUDGMENT**

13  |          v.                              **NOTED ON MOTION CALENDAR:**
    |                                          **MAY 6, 2011**
14  | AACRES LANDING, INC., et al.,

15  |                    Defendants.

16  |          **I.       INTRODUCTION AND RELIEF REQUESTED**

17  Through this lawsuit, Plaintiffs Judy Singley and Dana Singley[1] assert a myriad of

18  claims against the State of Washington, Department of Social and Health Services, Division of

19  Developmental Disabilities ("**Department**"), for alleged violations of the Americans with

20  Disabilities Act, the Rehabilitation Act, the Medicaid Act, and their First and Fourteenth

21  Amendment rights.  Plaintiffs also allege state law claims for breach of contract, "breach of

22  fiduciary duty/special relationship" and "public policy retaliation."

23  Pursuant to Fed. R. Civ. P. 56, the Department moves for dismissal of Plaintiffs' claims in

24  their entirety.  This motion is based on the Declarations of Ian M. Bauer, Teri O'Donnell,

25

26  _____
    [1] To avoid confusion, this memorandum will refer to Plaintiffs individually as Judy and Dana.  No
    disrespect is intended.

DEPARTMENT'S MOTION FOR                    1          ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT -- 3:09-CV-                                     Torts Division
05443-FDB                                                  7141 Cleanwater Drive SW
                                                                P O Box 40126
                                                           Olympia, WA 98504-0126
                                                               (360) 586-6300

Denise Pech and Brian Agar (Dkts. 56-59), the pleadings on file and the points of authority herein, which demonstrate that the Department is entitled to dismissal as a matter of law.[2]

## II.    STATEMENT OF FACTS

The facts relevant to the resolution of this motion are not in dispute.

### A.    Washington's HCBS Waiver Program

Medicaid is a joint program of the federal and state government through which the federal government provides financial assistance to states for the medical care of needy individuals.  42 U.S.C. §§ 1396-1396v.  States are not required to offer Medicaid programs, but if they do they must comply with applicable federal laws.  *Independent Acceptance Co. v. State of California*, 204 F.3d 1247, 1249 (9th Cir. 2000).

This case involves Washington's Home and Community Based Services ("**HCBS**") waiver programs.  While Medicaid normally pays for services only in institutional settings, HCBS waivers allow the Department to provide more flexible services to Medicaid-eligible individuals in community settings without adhering to certain federal regulations.  *See* 42 U.S.C. § 1396n(c)(1).  Washington's HCBS waiver programs for developmentally-disabled adults provide community-based alternatives to Intermediate Care Facilities for the Mentally Retarded, enabling qualified individuals to remain more integrated in their community than if they were institutionalized.  *See* WAC 388-845-0005, *et seq*. (2007).  Washington's HCBS waiver programs are regarded as a "genuine, comprehensive and reasonable" alternative to institutionalization.  *Arc v. Braddock*, 427 F.3d 615, 621 (9th Cir. 2005).  Participation in an HCBS waiver program is voluntary.  *See, e.g.,* WAC 388-845-0050, -0065 (2007).

The Department also contracts with third-parties to provide "residential services and support" to developmentally-disabled adults, enabling those individuals to live in their own

---

[2] In the event that the Court does not dismiss Plaintiffs' claims against the Department in response to the instant motion, the Department expressly reserves the right to assert additional substantive, procedural and/or jurisdictional defenses thereto in subsequent dispositive motions and/or at trial.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

homes.  *See, e.g.,* RCW 71A.12.010, .040; WAC 388-101-1180 (2007).  As of June 2007, the Department contracted with Defendant Aacres Landing, Inc. ("**Aacres**"), to provide such services to clients who, in turn, had agreed to receive such services from Aacres.  *Bauer Decl.*, Ex. Q (Dkt. 56).

**B.    Background Regarding Dana And Plaintiffs' Prior Lawsuit Against Aacres**

Dana is a 29 year-old developmentally-disabled woman who has been diagnosed with bipolar disorder, Asperger's syndrome, obsessive-compulsive disorder and oppositional defiant disorder.  Dana exhibits many challenging behaviors for those providing her care.  *See, e.g., Bauer Decl.*, Ex. A at 20:11-21:3, Ex. B at 13:19-20:5, 42:8-43:22, 51:12-56:1, Ex. C at 9-10 (Bates Nos. 01040925-26), Ex. S at 20:10-24:4, 30:6-14, 32:22-33:13, Exs. T-U (Dkt. 56); *O'Donnell Decl.*, ¶ 3 (Dkt. 57).  Dana has been a client of the Department since 1995, and a voluntary recipient of HCBS waiver services continuously from 2004 through the present. *O'Donnell Decl.*, ¶ 4, Exs. A-C (Dkt. 57).  *See also, e.g., Bauer Decl.*, Exs. D, F, I-J (Dkt. 56).

In July 2003, Dana lived in her private residence on South 67th Street in Tacoma, where she received services from Aacres.  The residence was a triplex; the other two residents were also Department clients who received services from Aacres.  Late at night on July 30, 2003, Dana left her home to purchase cigarettes without alerting her caregivers, and was raped by a stranger. Plaintiffs filed a lawsuit against Aacres regarding this incident, which settled on May 25, 2007. *See, e.g., Amended Complaint*, ¶ 3.4 (Dkt. 31); *Bauer Decl.*, Ex. A at 86:5-8, Ex. B at 69:12-23 (Dkt. 56).

**C.    Aacres' Termination Of Its Services To Dana, And The Department's Immediate And Ongoing Efforts To Provide Dana With Services**

As of June 2007, Dana still resided at her home on South 67th Street, and was still receiving services from Aacres.  On June 22, 2007, the Department received a fax from Aacres indicating that Aacres was terminating services to Dana Singley "effective immediately."  <u>This decision was made by Aacres, not the Department</u>.  The Department immediately contacted Rex

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Garrett, Aacres' CEO, to see if Aacres could continue supporting Dana for 72 hours.  Mr. Garrett indicated that Aacres could continue supporting Dana for 72 hours, provided that there were no additional behavior issues during that time which jeopardized Dana's safety or that of others (such as the other developmentally-disabled adults living at the triplex).   Later that day, Aacres contacted law enforcement and reported that Dana was destroying property and threatening Aacres' staff.  Dana was taken by law enforcement to a mental health facility.  *Bauer Decl.*, Ex. L, Ex. R at 26:2-4; Ex. S at 26:20-24, Ex. U (Dkt. 56); *O'Donnell Decl.*, ¶ 12, Ex. D (Dkt. 57); *Pech Decl.*, ¶¶ 3-5 (Dkt. 58).[3]

Immediately upon receipt of Aacres' termination notice, the Department offered Plaintiffs a panoply of HCBS waiver services, which Judy rejected.  Plaintiffs decided that Dana would reside with Judy while other options were considered.  At Plaintiffs' request, the Department waived its rules and authorized hundreds of hours of in-home personal care services for Dana.  Thereafter, the Department made extensive efforts to provide HCBS waiver services for Dana.  *O'Donnell Decl.*, ¶¶ 13-27 (Dkt. 57).  *See also Bauer Decl.*, Exs. C-I, N-O (Dkt. 56).

**D.     Current Lawsuit**

During her deposition, Judy testified that Plaintiffs' claims against the Department pertain solely to the "decision regarding Dana continuing to receive services from Aacres." *Bauer Decl.*, Ex. A at 51:5-10 (Dkt. 56).  Judy further testified that the Department did not intentionally harm Dana, discriminate against Plaintiffs in any way, retaliate against Plaintiffs for any reason or otherwise exclude Dana from any of its programs.  *Bauer Decl.*, Ex. A at 50:7-18, 67:18-68:2, 69:1-20 (Dkt. 56).  Judy also admitted that Plaintiffs failed to utilize the hundreds of in-home personal care services authorized by the Department after Aacres' termination.  *Bauer Decl.*, Ex. A at 62:23-65:16, Exs. N-O (Dkt. 56).  Further, Judy testified

---

[3] Plaintiffs were not a party to the conversation between Ms. Pech and Mr. Garrett, and have no personal knowledge thereof.  *See Bauer Decl.*, Ex. A at 44:4-45:25 (Dkt. 56).

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

that the Department worked "very hard" to provide Dana with the services she needed after Aacres' termination, and did not "fail[]" to offer Dana services that she should have received thereafter. *Bauer Decl.*, Ex. A at 67:10-13, 69:21-24 (Dkt. 56).[4]

Judy also testified that she participated in the development of Dana's Individual Service Plans in 2007, 2008, 2009 and 2010. Judy admitted, however, that she never requested any changes thereto, and never appealed any decision made by the Department regarding services provided to Dana. *Bauer Decl.*, Ex. A at 21:20-23:11, 27:3-5, 27:19-22, 28:5-8, 32:12-38:19, Exs. C-I (Dkt. 56). Further, Plaintiffs repeatedly acknowledged after Aacres' termination that, *inter alia*: "[we] had a choice of qualified providers to meet [Dana's] health and welfare needs"; "If any current provider is not to [our] satisfaction, [we were] able to plan to meet [Dana's] needs by selecting another provider or in other ways"; and, "[Dana's] health and welfare needs are either currently being met or an adequate plan is in place to meet them in a timely manner." *Bauer Decl.*, Ex. A at 39:6-41:8, Exs. J-K (Dkt. 56); *O'Donnell Decl.*, Ex. A (Dkt. 57).[5]

During her deposition, Dana could not identify any reason why she would want to file a lawsuit against the Department. *Bauer Decl.*, Ex. B at 70:1-8 (Dkt. 56).

## III.   AUTHORITY & ARGUMENT

### A.   Standard Of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the

---

[4] *See also Bauer Decl.*, Ex. A at 65:17-66:14 (admitting that Ms. Pech's letter dated May 1, 2008, accurately describes the Department's efforts to obtain services for Dana after Aacres' termination) (Dkt. 56). A true and correct copy of Ms. Pech's letter dated May 1, 2008 is attached as Exhibit M to the Declaration of Ian M. Bauer (Dkt. 56). *See Pech Decl.*, ¶ 6 (Dkt. 58).

[5] Judy also testified that she was not seeking an order from this Court directing the Department to modify its programs in any way. *Bauer Decl.*, Ex. A at 68:15-25 (Dkt. 56).

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1
2
3
nonmoving party fails to make a sufficient showing on an essential element of claims on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

4
5
6
7
8
9
10
11
12
13
14
15
   The moving party may challenge the sufficiency of the evidence to support the nonmoving party's case, without the need to support the motion with affidavits or other evidence negating the opponent's claims. *Id.* at 323. Fed. R. Civ. P. 56(e) requires the nonmoving party to go beyond the pleadings and come forward with admissible evidence in the form of affidavits, depositions or other material to demonstrate there are genuine issues of material fact for trial. *Id.* at 324. A nonmoving party's failure to come forward with such evidence entitles the moving party to judgment as a matter of law. *Id.* at 323. *See also Lujan v. National Wildlife Fed.*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990) (conclusory, non-specific statements do not create triable issues of fact; "missing facts" will not be "presumed"); *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both legally insufficient to withstand summary judgment.").

16
**B.    Plaintiffs' ADA And Rehabilitation Act Claims Are Without Merit**

17
18
   Plaintiffs assert that the Department's conduct violated Title II of the ADA and § 504 of the Rehabilitation Act. *Amended Complaint*, ¶¶ 3.1-4.5 (Dkt. 31).

19
20
   Title II of the ADA provides, in pertinent part:

21
22
   No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

23
42 U.S.C. § 12132. § 504 of the Rehabilitation Act includes similar prohibitions:

24
25
   No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

26

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency […].

29 U.S.C. § 794(a).

By statute, the remedies for violations of the ADA and the Rehabilitation Act are co-extensive with each other and are linked to Title VI of the Civil Rights Act of 1964.  42 U.S.C. § 12133; 29 U.S.C. § 794a(a)2; 42 U.S.C. § 2000d-7(a)(2); *Ferguson v. City of Phoenix*, 157 F.3d 668, 673 (9th Cir. 1998), *cert. denied,* 526 U.S. 1159 (1999).  Compensatory damages are not available under ether Act absent a showing of intentional discriminatory behavior.  *Ferguson*, 157 F.3d at 674.  Further, the Rehabilitation Act does not afford a right to relief without demonstrating exclusion from a covered program.  *Hutchison v. Spink,* 126 F.3d 895, 901 (7th Cir. 1997).

The test to determine whether discrimination has occurred under Title II of the ADA and the Rehabilitation Act is essentially the same.  *E.g., Lincoln CERCPAC v. Health and Hospitals Corp.,* 920 F. Supp. 488 (S.D.N.Y. 1996).  To prove that a defendant violated the ADA, a plaintiff must show that she is a qualified individual with a disability; she was either excluded from participation in or denied benefits of the defendant's services, programs or activities or was otherwise discriminated against by the defendant; and such exclusion, denial or discrimination was by reason of her disability.  *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.), *cert. denied* 522 U.S. 971 (1997).

Likewise, to state a claim under the Rehabilitation Act a plaintiff must prove that: (1) she was a handicapped individual; (2) she was otherwise qualified for the benefit sought; (3) she was denied the benefit and discriminated against solely by reason of her disability; and (4) the program or activity in question received federal financial assistance.  *Id.*  The word "solely" provides the key: the discrimination must result from the handicap alone.  *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992), *cert. denied*, 507 U.S. 910 (1993).

Here, there is no evidence that the Department discriminated against Plaintiffs or excluded Dana from any of its programs, much less evidence that the Department did so by

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

reason of Dana's disability.  To the contrary, Dana has been a Department client since <u>1995</u>; the Department has provided HCBS waiver services to Dana <u>continuously</u> since 2004.  The Department did not "evict" Dana from her residence.  Moreover, the Department did not terminate <u>any</u> services it was providing to Dana, and did not have the authority to "overrule" Aacres' termination decision.[6]  And, <u>immediately</u> upon receipt of Aacres' termination notice, the Department offered Plaintiffs a panoply of HCBS waiver services, <u>which Judy rejected</u>. Further, the Department promptly authorized <u>hundreds</u> of hours of in-home personal care services for Dana, and made <u>extensive</u> efforts to provide Dana with services over the weeks, months and years following Aacres' termination.  *See O'Donnell Decl.*, ¶¶ 4, 12-29, Exs. A-C (Dkt. 57); *Pech Decl.*, ¶¶ 3, 5, 7-8 (Dkt. 58).  *See also Bauer Decl.*, Exs. C-K, N-O (Dkt. 56).

Plaintiffs' deposition testimony further refutes their claim that the Department violated the ADA and/or Rehabilitation Act.  Specifically, <u>Judy unequivocally testified that the Department did not intentionally harm Dana, discriminate any Plaintiffs in any way, retaliate against Plaintiffs for any reason or otherwise exclude Dana from any Department program</u>. *Bauer Decl.*, Ex. A at 50:7-18, 67:18-68:2, 69:1-20 (Dkt. 56).  Judy also testified that the Department worked "very hard" to provide Dana with services she needed after Aacres' termination, and did not "fail[]" to offer Dana any services that she should have received. *Bauer Decl.*, Ex. A at 67:10-13, 69:21-24 (Dkt. 56).[7]  Judy also admitted that Plaintiffs failed to utilize the <u>hundreds</u> of hours of in-home personal care services authorized by the Department following Aacres' termination.  *Bauer Decl.*, Ex. A at 62:23-65:16, Exs. N-O (Dkt. 56).  Judy also admitted that she participated in the development of Dana's Individual Service Plans in 2007, 2008, 2009 and 2010, <u>but never requested any changes thereto and never</u>

---

[6] It is beyond dispute that the decision to terminate Aacres' services was made by Aacres, not the Department.  *O'Donnell Decl.*, ¶ 12, Ex. D (Dkt. 57); *Pech Decl.*, ¶ 3 (Dkt. 58).  *See also Bauer Decl.*, Ex. L, Ex. R at 26:2-4; Ex. S at 26:20-24 (Dkt. 56).

[7] *See also Bauer Decl.*, Ex. A at 65:17-66:14 (admitting that Ms. Pech's letter dated May 1, 2008, accurately describes the Department's efforts to provide services to Dana after Aacres' termination) (Dkt. 56).

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

appealed any decision made by the Department regarding services provided to Dana. *Bauer Decl.*, Ex. A at 21:20-23:11, 27:3-5, 27:19-22, 28:5-8, 32:12-38:19, Exs. C-I (Dkt. 56). Further, Plaintiffs repeatedly acknowledged <u>after Aacres' termination</u> that, *inter alia*: "[we] had a choice of qualified providers to meet [Dana's] health and welfare needs"; "If any current provider is not to [our] satisfaction, [we were] able to plan to meet [Dana's] needs by selecting another provider or in other ways"; and, "[Dana's] health and welfare needs are either currently being met or an adequate plan is in place to meet them in a timely manner." *Bauer Decl.*, Ex. A at 39:6-41:8, Exs. J-K (Dkt. 56); *O'Donnell Decl.*, Ex. A (Dkt. 57).[8]

Based on these undisputed facts and Plaintiffs' deposition testimony, no reasonable juror could conclude that the Department discriminated against Plaintiffs or excluded Dana from any of its programs. Plaintiffs' ADA and Rehabilitation Act claims should thus dismissed with prejudice.[9]

## C. Plaintiffs' Claims Under 42 U.S.C. § 1983 Are Without Merit

Pursuant to 42 U.S.C. § 1983, Plaintiff asserts claims against the Department for alleged violations of the Medicaid Act and their First and Fourteenth Amendment rights. *See,*

---

[8] During her deposition, Dana could not identify <u>any</u> reason why she would want to file a lawsuit against the Department. *Bauer Decl.*, Ex. B at 70:1-8 (Dkt. 56).

[9] The Court should disregard Plaintiffs' suggestion that the Department is vicariously liable for <u>Aacres'</u> alleged violations of the ADA and Rehabilitation Act. By their plain language, these Acts preclude state agencies from discriminating <u>in own their programs</u> based on a person's disability. Title II regulations provide further guidance. *See* 28 C.F.R. § 35.150(a) ("a public entity shall operate each service, program or activity so that <u>the service, program, or activity, when viewed in its entirety</u>, is readily accessible to and usable by individuals with disabilities.") (emphasis added); 28 C.F.R. § 35.130(b)(1) ("[a] public entity, <u>in providing any aid, benefit or service</u>, may not … deny a qualified individual with a disability the opportunity to benefit from <u>the aid, benefit or service</u>") (emphasis added); 28 C.F.R. § 35.130(b)(6) (expressly providing that "the programs or activities of entities that are licensed or certified by a public entity are not themselves covered"). Notably, the Department of Justice interprets 28 C.F.R § 35.130 to mean that a state agency may not "impose eligibility criteria for participation in <u>its</u> programs, services, or activities[.]" *See* ADA Title II Technical Assistance Manual, II-3.5100 General, U.S. Department of Justice Civil Rights Division (January 1993) (emphasis added). The Justice Department's interpretation of its regulations must be given substantial deference and will be disregarded only if "plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). In other words, a plaintiff must demonstrate discrimination by the <u>defendant state agency</u>, or exclusion from the <u>agency's</u> programs as a result of that <u>agency's</u> conduct. Here, Plaintiffs concede that the Department did not discriminate against them or exclude Dana from any Department program. Plaintiffs' claims under the ADA and Rehabilitation Act thus fail as a matter of law.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

*e.g.*, *Amended Complaint*, ¶¶ 5.1-5.6, 6.1-6.6, 10.1, 10.3 (Dkt. 31). Plaintiffs' § 1983 claims are without merit for multiple, independent reasons. As a threshold matter, the Department is not a "person" subject to suit for monetary damages under § 1983. Plaintiffs' § 1983 claims also lack a legal and factual basis. Further, Plaintiffs are not entitled to punitive damages or injunctive relief as a matter of law.

### 1. The Department Is Not A "Person" Subject To Suit For Compensatory And/Or Punitive Damages Under The Civil Rights Act

It is well-established that states and state agencies are not "persons" subject to suit for compensatory and/or punitive damages under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); *Coffin v. South Carolina Dept. of Social Services*, 562 F. Supp. 579, 585-86 (1983) (citations omitted). Plaintiffs' *Amended Complaint* does not name any individual state defendant, but is instead brought solely against the Department. The Department is not a "person" subject to suit for compensatory and/or punitive damages under § 1983. *Id.* Thus, as a matter of law, Plaintiffs are not entitled to compensatory and/or punitive damages for the Department's alleged violations of the Medicaid Act and/or their First and Fourteenth Amendment rights. *Id.* Plaintiffs' § 1983 claims should be dismissed accordingly.

### 2. Plaintiffs' Medicaid Act Claims Are Without Merit

Plaintiffs seek relief for alleged violations of the Medicaid Act pursuant to 42 U.S.C. § 1983. *Amended Complaint*, ¶¶ 5.1-5.6 (Dkt. 31). Specifically, Plaintiffs allege that the Department violated 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(23) and 1396n(c)(2)(C). Plaintiffs' claims are without merit in light of the undisputed facts of this case and Plaintiffs' deposition testimony. Further, no private cause of action exists for alleged violations of § 1396a(a)(23).[10]

---

[10] As discussed *supra* at 10, Plaintiffs are not entitled to compensatory and/or punitive damages for the Department's alleged violations of the Medicaid Act.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**a.     Plaintiffs Cannot Establish That The Department Violated § 1396a(a)(8)**

42 U.S.C. § 1396a(a)(8) provides that "all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." By its plain language, this statute, known as the "reasonable promptness" provision, requires that the Department allow individuals to apply for and, if eligible, receive waiver services with reasonable promptness.

Here, it is self-evident that the Department complied with its obligations under § 1396a(a)(8)—Dana been receiving HCBS waiver services continually since 2004. There is thus no basis upon which this Court could conclude that the Department prevented Dana from applying for Medicaid waiver services or failed to provide such services to her with reasonable promptness. Moreover, the Department did not terminate any services it was providing to Dana in June 2007. And, immediately upon receipt of Aacres' termination notice, the Department offered Plaintiffs a panoply of HCBS waiver services, which Judy rejected. Further, the Department promptly authorized hundreds of hours of in-home personal care services for Dana, and made extensive efforts to provide Dana with services over the weeks, months and years following Aacres' termination. Plaintiffs have not identified any available HCBS waiver service that the Department failed to offer at the earliest opportunity; any lack of promptness in those services being received was due to Plaintiffs' refusal to accept those services and/or the providers' refusal to provide those services to Dana. Indeed, Judy testified that the Department worked "very hard" to provide Dana with services she needed after the termination by Aacres; the Department did not "fail[]" to offer Dana any services that she should have received. Further, Plaintiffs repeatedly acknowledged after Aacres' termination that, *inter alia*, "[Dana's] health and welfare needs are either currently being met or an adequate plan is in place to meet them in a timely manner." *See discussion, supra* at 7-9.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

Based upon these undisputed facts and Plaintiffs' deposition testimony, no reasonable juror could conclude that the Department failed to provide Dana HCBS waiver services with "reasonable promptness." Plaintiffs' claims under § 1396a(a)(8) should be dismissed.

### b.   Plaintiffs' Claims Under § 1396a(a)(23)(A) Are Without Merit

42 U.S.C. § 1396a(a)(23)(A) provides that a State plan for medical assistance must provide that "any individual eligible for medical (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required […], who undertakes to provide him such services." (Emphasis added).

In interpreting § 1396a(a)(23)(A), the Supreme Court has held that Medicaid recipients do not have an absolute right to receive continued services from a preferred provider. *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785, 100 S. Ct. 2467, 65 L. Ed. 2d 506 (1980). Rather, the provision "gives recipients the right to chose among a range of qualified providers, without government interference." *Id.* (emphasis omitted). Notably, the Washington Court of Appeals has expressly held that "forcing a recipient to change caregivers or to physically relocate when the current care provider is no longer willing or qualified to provide such services does not violate the Medicaid choice of provider requirements" set forth in § 1396a(a)(23). *Gasper-Myers v. DSHS*, 132 Wn. App. 42, 57-58, 129 P.3d 849 (2006) (*citing O'Bannon*, 447 U.S. at 785, *Kelly Kare, Ltd. v. O'Rourke*, 930 F.2d 170, 178 (2nd Cir. 1991)).[11] *See also* 42 C.F.R. § 431.51(b)(1) ("[A] recipient may obtain Medicaid services from any … person … Willing to furnish them to that particular recipient.") (emphasis added); *Antrican v. Buell,* 158 F.Supp.2d 663, 671 (E.D.N.C.2001), *partially aff'd on other grounds sub nom. Antrican v. Odom,* 290 F.3d 178 (4th Cir.), *cert. denied,* 537 U.S. 973 (2002) ("Section 1396a(a)(23)(A) does not encompass the right to free access to doctors unwilling to service Medicaid patients; while the government is prohibited from blocking access to

---

[11] *Overruled on other grounds sub nom. Jenkins v. DSHS*, 160 Wn.2d 287, 157 P.3d 388 (2007).

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

qualified providers willing to provide the services, § 1396a(a)(23)(A) does not impose on states an affirmative duty to ensure that plaintiffs have a large pool of dentists from which to choose.").

Plaintiffs' claims under § 1396a(a)(23)(A) should be dismissed for two reasons. First, the statute does not give rise to a private cause of action enforceable under § 1983. Second, no reasonable juror could conclude that the Department violated § 1396a(a)(23)(A).

**(1)     Plaintiffs Do Not Have A Private Right Of Action To Enforce § 1396a(a)(23)(A)**

To pursue a cause of action under § 1983, a plaintiff must establish that: (1) Congress intended a particular statute benefit them; (2) the right they assert is not so "vague and amorphous" that enforcing it "would strain judicial competence"; and (3) the statute unambiguously impose[s] a binding obligation" on the Department. *Sanchez v. Johnson*, 416 F.3d 1051, 1056-57 (9th Cir. 2005) (*quoting Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)). A plaintiff must establish that the statute confers upon them an "unambiguously conferred right" that the Court can enforce. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); *Sanchez*, 416 F.3d at 1057. It is <u>rights</u>, not broad "benefits" or "interests" that may be enforced pursuant to § 1983. *Id.*[12]

Plaintiffs have not and cannot establish any of the three *Blessing* factors with respect to § 1396a(a)(23)(A). This statute is vague and amorphous, and attempting to enforce it would strain judicial competence. The "text and structure" of the statute is also so "broad and nonspecific" that no Congressional intent to allow a private cause of action can be inferred therefrom. Plaintiffs' claims under § 1396a(a)(23)(A) thus fail as a matter of law.

---

[12] It is well-established that a plaintiff can pursue an action under § 1983 only if he or she alleges violation of a federal <u>statute</u>, not merely a federal <u>regulation</u>. *Guzman v. Shewry*, 552 F.3d 941, 952 (9th Cir. 2009); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003). The Court should thus disregard Plaintiffs' suggestion that federal regulations give rise to rights enforceable under § 1983, and dismiss any claims predicated on an alleged violation thereof.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**(2)** **Plaintiffs Cannot Establish That The Department Violated §
1396a(a)(23)(A)**

Even if a private cause of action existed to enforce § 1396a(a)(23)(A), reasonable minds can reach but one conclusion—the Department did not "block[] [Dana's] access to qualified providers" or otherwise violate the statute.  Indeed, the Department has provided Dana with HCBS waiver services continuously since 2004.  The Department did not terminate any of its services to Dana in June 2007, and did not have the authority to "overrule" Aacres' termination decision.[13]  Further, the Department offered Plaintiffs a panoply of HCBS waiver services immediately upon receipt of Aacres' termination notice, which Judy rejected.  The Department also authorized hundreds of hours of in-home personal care services for Dana promptly after Aacres' termination, and made extensive efforts to provide Dana with HCBS waiver services over the weeks, months and years after Aacres' termination.  Again, Plaintiffs have not identified any available HCBS waiver service that the Department failed to offer at the earliest opportunity; any lack of promptness in those services being received was due to Plaintiffs' refusal to accept those services and/or the providers' refusal to provide those services to Dana.  Indeed, Judy testified that the Department worked "very hard" to provide Dana with services after Aacres' termination and did not "fail[]" to offer Dana any services that she should have received after Aacres' termination.  Further, Plaintiffs repeatedly acknowledged after Aacres' termination that, *inter alia*: "[we] had a choice of qualified providers to meet [Dana's] health and welfare needs"; "If any current provider is not to [our] satisfaction, [we were] able to plan to meet [Dana's] needs by selecting another provider or in other ways"; and, "[Dana's] health and welfare needs are either currently being met or an adequate plan is in place to meet them in a timely manner." *See discussion, supra* at 7-9.

---

[13] As discussed *supra* at 12-13, Dana did not have a right under § 1396a(a)(23)(A) to continue receiving services from Aacres.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1

2          Based upon these undisputed facts and Plaintiffs' deposition testimony, no reasonable

3   juror could conclude that the Department "block[ed Dana's] access to qualified providers" or

4   otherwise violated § 1396a(a)(23)(A).   Plaintiffs' § 1396a(a)(23)(A) claims should be

5   dismissed as a matter of law for this additional, independent reason.

6          **c.      Plaintiffs Cannot Establish That The Department Violated §
            1396n(c)(2)(C)**

7          As a condition of having certain federal Medicaid requirements "waived" for a portion

8   of its program, the Department must assure the federal government that:

9          [S]uch individuals who are determined to be likely to require the level of care provided
10         in a […] intermediate care facility for the mentally retarded <u>are informed of the feasible
           alternatives</u>, if available under the waiver, at the choice of such individuals, to the
11         provision of […] services in an intermediate care facility for the mentally retarded[.]

12  42 U.S.C. § 1396n(c)(2)(C) (emphasis added).[14]  *See also* 42 C.F.R. § 441.302(d); *Bertrand ex*

13  *rel. Bertrand v. Maram*, 495 F.3d 452, 459 (7th Cir. 2007).  The plain language of this statute

14  requires that the Department keep Medicaid clients <u>informed</u> of any waiver services it might

15  offer as an alternative to institutional care.  *Ball v. Rogers*, 492 F.3d 1094, 1111 (9th Cir. 2007)

16  (holding that the statute "seek[s] to guarantee that individual patients are informed of

17  noninstitutional care options and that individual patients retain the right to make a choice based

18  on this information") (emphasis omitted); *Doe v. Kidd*, 501 F.3d 348, 359 (4th Cir. 2007)

19  ("Section 1396n of the Act merely requires states to inform participants in the waiver program

20  of 'the feasible alternatives' [to institutional care]"); *Maram*, 495 F.3d at 459 (holding that the

21  state complies with the statute so long as clients are not "ignorant of options open" to them).

22         Here, it is self-evident that the Department complied with its obligation under § 1396n

23  to "inform [Plaintiffs] of feasible alternatives" to institutional services—<u>Dana has been</u>

24  _____

25         [14] This portion of the waiver statute pertains to individuals "with respect to whom there has been a
    determination that[,] but for the provision of such services[,] the individuals would require the level of care
26  provided in a hospital or a nursing facility or intermediate care facility for the mentally retarded[,] the cost of
    which could be reimbursed under the [State Plan]."  *See* 42 U.S.C. § 1396n(c)(1).

DEPARTMENT'S MOTION FOR                    15              ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT -- 3:09-CV-                                              Torts Division
05443-FDB                                                             7141 Cleanwater Drive SW
                                                                          P O Box 40126
                                                                      Olympia, WA 98504-0126
                                                                          (360) 586-6300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

receiving community-based HCBS waiver services continually since 2004. Moreover, it is undisputed that upon receipt of Aacres' termination notice the Department immediately offered Plaintiffs a panoply of HCBS waiver services, which Judy rejected. The Department also authorized hundreds of hours of in-home personal care services for Dana promptly after Aacres' termination, and made extensive efforts to provide Dana with services over the weeks, months and years after Aacres' termination. Plaintiffs have not identified any available HCBS waiver service that the Department failed to offer at the earliest opportunity. Indeed, Judy testified that the Department worked "very hard" to provide Dana with services after Aacres' termination and did not "fail[]" to offer Dana any services that she should have received after Aacres' termination. Further, Plaintiffs repeatedly acknowledged after Aacres' termination that, *inter alia*: "[we] had a choice of qualified providers to meet [Dana's] health and welfare needs"; "If any current provider is not to [our] satisfaction, [we were] able to plan to meet [Dana's] needs by selecting another provider or in other ways"; and, "[Dana's] health and welfare needs are either currently being met or an adequate plan is in place to meet them in a timely manner." *See discussion, supra* at 7-9.

Based upon these undisputed facts and Plaintiffs' deposition testimony, no reasonable juror could conclude that the Department failed to inform Plaintiffs of available HCBS waiver services, or that Plaintiffs were "ignorant of the options open" to them with regard to such services. Plaintiffs' claims under § 1396n(c)(2)(C) should be dismissed with prejudice.

**3.      Plaintiffs' First Amendment Retaliation Claims Are Without Merit**

Plaintiffs allege that the Department retaliated against them in violation of the First Amendment. *Amended Complaint*, ¶ 6.6 (Dkt. 31).[15]  To establish a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) she was engaged in constitutionally-

_____

[15] As discussed *supra* at 10, Plaintiffs are not entitled to compensatory and/or punitive damages for the Department's alleged violations of their First Amendment Rights.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

16

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and, (3) the government's actions were substantially motivated as a response to her constitutionally-protected conduct. *E.g.,* *Nielander v. Bd. of Cty. Commsrs.*, 582 F.3d 1155, 1165 (10th Cir. 2009).

Here, there is no evidence that the Department retaliated against Plaintiffs as a result of the prior lawsuit against Aacres. <u>The decision to terminate Aacres' services was made by Aacres, not the Department</u>. Moreover, the Department did not terminate <u>any</u> services to Dana, and made extensive efforts to provide Dana with services <u>immediately</u> upon receipt of Aacres' termination notice and over the following weeks, months and years. *See discussion, supra* at 7-9. <u>Judy also testified unequivocally that the Department did not retaliate against Plaintiffs for any reason</u>. *Bauer Decl.*, Ex. A at 69:1-20 (Dkt. 56). Based upon the undisputed facts of this case and Plaintiffs' deposition testimony, no reasonable juror could conclude that the Department retaliated against Plaintiffs for <u>any</u> reason, much less by reason of Plaintiffs' prior lawsuit against Aacres. Plaintiffs' First Amendment retaliation claims should thus be dismissed with prejudice.

### 4.   Plaintiffs' Procedural Due Process Claims Are Without Merit

Plaintiffs contend that the Department violated Dana's procedural due process rights by "evicting her from her home without an appropriate reason and without the opportunity or time to find adequate substitute housing." *Amended Complaint*, ¶¶ 6.4-6.5 (Dkt. 31).[16]

### a.   The Fourteenth Amendment's Procedural Due Process Protections Are Not Implicated By The Facts Of This Case

To be entitled to the procedural protections of the Fourteenth Amendment, Plaintiffs must demonstrate that (1) Dana had a constitutionally-protected property interest, (2) she suffered a loss of that interest amounting to a deprivation, and (3) that the deprivation occurred without due

---

[16] As discussed *supra* at 10, Plaintiffs are not entitled to compensatory and/or punitive damages for the Department's alleged violations of their Fourteenth Amendment procedural due process rights.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1

2

process of law.  *E.g., Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82, 98 S. Ct.

948, 55 L. Ed. 2d 124 (1978).  In order to have a constitutionally-protected property interest, "a

3

person clearly must have more than an abstract need or desire for it.  He must have more than a

4

unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of*

5

*Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

6

7

        Here, Plaintiffs have not and cannot identify any constitutionally-protected property

interest implicated by the Department's conduct.   Nor can Plaintiffs demonstrate that the

8

Department deprived Dana of any such interest.  The Department did not "evict" Dana.  In fact,

9

the Department did not terminate <u>any</u> services it was providing to Dana.  It is also undisputed

10

that the Department made extensive efforts to provide Dana with services <u>immediately</u> after

11

Aacres' termination, and over the weeks, months and years that followed.  *See discussion,*

12

*supra* at 7-9.  Plaintiffs' procedural due process claims thus fail as a matter of law.

13

14

      **b.**      **The Department's Conduct Was Not "Arbitrary" In The Constitutional Sense**

15

        It is well-established that "the touchstone of due process under the Fourteenth

16

Amendment is protection of the individual against arbitrary government action," and that "only

17

the most egregious official conduct can be said to be arbitrary in the constitutional sense."

18

*E.g., Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S. Ct. 1708, 140 L. Ed. 2d 1043

19

(1998).  Based on the undisputed facts of this case and Plaintiff's deposition testimony, no

20

reasonable juror could conclude that the Department's conduct with respect to Dana was so

21

arbitrary as to violate Plaintiffs' constitutional rights.  *See discussion, supra* at 7-9.  Plaintiffs'

22

procedural due process claims should be dismissed for this additional, independent reason.

23

24

25

26

18

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

### 5.      Plaintiffs' Substantive Due Process Claims Should Be Dismissed

Plaintiffs' contend that the Department violated Dana's substantive due process rights by "evicting her from her home without an appropriate reason and without the opportunity or time to find adequate substitute housing." *Amended Complaint*, ¶¶ 6.4-6.5 (Dkt. 31).[17]

### a.      The Fourteenth Amendment's Substantive Due Process Protections Are Not Implicated By The Facts Of This Case

It is well-established that substantive due process protects individuals from arbitrary, wrongful government actions, "regardless of the fairness of the procedures used to implement them." *E.g., Daniels v. Williams*, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Rights are protected under the substantive due process clause if they are "so rooted in the tradition and conscience of our people as to be ranked as fundamental" or if such rights reflect "basic values implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist if they were sacrificed." *E.g., Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997) (citations omitted).

Plaintiffs have not and cannot identify any substantive due process right implicated by the facts of this case.[18,19]  Plaintiffs' substantive due process claims thus fail as a matter of law.

---

[17] As discussed *supra* at 10, Plaintiffs are not entitled to compensatory and/or punitive damages for the Department's alleged violations of their Fourteenth Amendment substantive due process rights.

[18] Plaintiffs' substantive due process claims are predicated on the false premise that the Department "evicted" Dana from her home. However, the Department did not "evict" Dana or terminate any of its services to her.  *See discussion, supra* at 7-9.

[19] Dana was a voluntary participant in the HCBS waiver program at all times material to this lawsuit, and voluntarily received services from Aacres.  *See* WAC 388-845-0050, -0065 (2007).  *See also, e.g., Bauer Decl.*, Exs. D, F, I-J (Dkt. 56); *O'Donnell Decl.*, ¶¶ 4-5, Exs. A-C (Dkt. 57).  The Department did not take any affirmative act to restrain Dana's freedom to act on her own behalf.  Hence, no affirmative duty to protect Dana arose under the Fourteenth Amendment.  *See, e.g., DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 199-200, 109 S. Ct. 988, 103 L. Ed. 2d 249 (1989) (holding that the due process clause does not create an affirmative duty to guarantee the safety of an individual unless "the State by affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs").

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

19

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**b.    Plaintiffs Cannot Establish That The Department's Conduct "Shocks the Conscience"**

Substantive due process claims are governed by the Fourteenth Amendment's "shocks the conscience" standard.  *Lewis*, 523 U.S. at 845-47.  The essential question is whether the defendant's behavior is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. at 847.

Here, the Department did not "evict" Dana or terminate <u>any</u> of the services it was providing to her.  Further, it is undisputed that the Department made extensive efforts to provide Dana with services <u>immediately</u> after Aacres' termination, and over the weeks, months and years that followed.  *See discussion, supra* at 7-9.  Quite simply, no reasonable juror could conclude that the Department's conduct "shocks the conscience."  Plaintiffs' substantive due process claims should be dismissed as a matter of law for this additional, independent reason.

**6.    The Department Is Not Liable Under § 1983 For <u>Aacres'</u> Alleged Misconduct**

Plaintiffs contend that the Department is liable under § 1983 for Aacres' alleged violations of the Medicaid Act and Plaintiffs' First and Fourteenth Amendment Rights.

To maintain a § 1983 action, a plaintiff must demonstrate that <u>each</u> defendant personally participated in a deprivation of federal rights; liability cannot be vicarious or premised on *respondeat superior*.  *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Simmons v. Navajo County*, 609 F.3d 1020-21, (9th Cir. 2010) (to survive summary judgment, a plaintiff "must therefore adduce evidence that [each of the named defendants] … themselves acted or failed to act unconstitutionally, not merely that a subordinate did.") (citations omitted).  A governmental entity can only be held responsible for the decisions of a third-party private actor when it exercised coercive power or provided such significant encouragement, either overt or covert, that the private actor's decision must be deemed to be that of the state as a matter of law.  *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (nursing homes' decisions to

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

20

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

discharge or transfer patients did not constitute state action); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995) (mere acquiescence of a state official in actions of a private party does not constitute state action); *Loh-Seng Yo V. Cibola Gen. Hosp.*, 706 F.2d 306, 307 (10th Cir. 1983) ("the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff, but with the activity that caused the injury") (emphasis in original).

Here, the decision to terminate Aacres' services was made by Aacres, not the Department. There is no evidence that the Department exercised coercive power over Aacres or offered Aacres "significant encouragement" with respect to this decision or any other pertinent matter. The Department is thus not liable under § 1983 for Aacres' alleged misconduct for two independent reasons. First, § 1983 actions cannot be based on vicarious liability. Second, Aacres' alleged misconduct does not constitute state action attributable to the Department. Plaintiffs' § 1983 claims should be dismissed accordingly.

**7.      Plaintiffs Are Not Entitled To Punitive Damages Under § 1983**

To establish a claim for punitive damages under § 1983, a plaintiff must set forth evidence that the defendant harbored an "evil motive or intent" or acted with "reckless or callous indifference" to the plaintiff's federal rights. *See, e.g., Smith v. Wade*, 461 U.S., 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). Here, there is no evidence that the Department harbored an "evil motive or intent" against Plaintiffs or acted with "reckless or callous indifference" with respect to Plaintiffs' federal rights. Quite to the contrary. *See discussion, supra* at 7-9. Based upon the undisputed facts of this case and Plaintiffs' deposition testimony, no reasonable juror could conclude that the Department harbored an "evil motive or intent" or

21

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1  acted with "reckless or callous indifference" to Plaintiff's federal rights.  Plaintiffs' claims for

2  punitive damages should thus be dismissed with prejudice.[20]

3  **D.      Plaintiffs' Breach Of Contract Claims Are Without Merit**

4          Plaintiffs assert that they were intended third-party beneficiaries of the Client Services

5  Contract between DSHS and Aacres, and that the Department breached the Client Services

6  Contract by "terminating the residency of Dana."  *Amended Complaint*, ¶¶ 7.1-7.4 (Dkt 31).

7  Plaintiffs' breach of contract claims should be dismissed for multiple, independent reasons.

8          **1.      The Department Did Not "Terminate The Residency Of Dana"**

9          Plaintiffs' breach of contract claim is predicated on the false premise that the Department

10  "terminated the residency of Dana."  *Id.*  The Department did not "evict" Dana.  In fact, the

11  Department did not terminate <u>any</u> services it was providing to Dana, and did not have any

12  authority to "overrule" Aacres' termination decision.  *See discussion, supra* at 7-9.  Plaintiffs'

13  breach of contract claim should be dismissed for this reason alone.

14          **2.      Plaintiffs Are Not Intended Beneficiaries Of The Client Services Contract**

15          Parties that benefit from a government contract are generally assumed to be incidental not

16  intended beneficiaries, and may not enforce the contract absent a clear intent to the contrary.

17  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) (*citing*

18  Rest. (Second) of Contracts § 313(2) (1979)).  Thus, while government contracts often benefit the

19  public, individual members of the public are treated as incidental beneficiaries unless <u>both</u> parties

20  specifically intended to assume a direct, legal obligation to the third-party at the time they entered

21  into the contract.  *Id.; Burke & Thomas, Inc. v. International Organization of Masters, Mates &*

22  *Pilots*, 92 Wn.2d 762, 767, 600 P.2d 1282 (1979).  There is no evidence of such intent here.

23

24

25          _____

26          [20] Plaintiffs are not entitled to punitive damages on their state law claims.  *See, e.g., Dailey v. North Coast Life Ins. Co.*, 129 Wn.2d 572, 919 P.2d 589 (1996).

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB                                    22                    ATTORNEY GENERAL OF WASHINGTON
                                                                                        Torts Division
                                                                                 7141 Cleanwater Drive SW
                                                                                      P O Box 40126
                                                                                Olympia, WA 98504-0126
                                                                                      (360) 586-6300

The plain language of the Client Services Contract provides that the Department's obligations are limited to reimbursing Aacres for providing residential support services to Department clients living in private homes, such as Dana. *See Bauer Decl.*, Ex. Q at 5 (¶¶ 4-5) (Dkt. 56). Aacres—not the Department—was contractually responsible for Dana's day-to-day care. *Bauer Decl.*, Ex. Q at 3, 9 (¶¶ 3, 9) (Dkt. 56).[21, 22]   More to the point, the plain language of the Client Services Contract does not evince any intent on the part of the Department to assume a direct contractual obligation to Plaintiffs, nor is there any collateral evidence of such intent. The Department's contractual obligations ran exclusively to Aacres; any benefits derived by Plaintiffs were merely incidental, as they obtained no enforceable rights under the Client Services Contract or any amendment thereto. *Klamath*, 204 F.3d at 1211-12; *Wright v. Fred Hutchinson Cancer Research Center*, 269 F. Supp. 2d 1286, 1290 (W.D. Wa. 2002). Plaintiffs thus lack third-party beneficiary standing to bring suit for alleged breach of the Client Services Contract. Plaintiffs' breach of contract claim should be dismissed for this additional, independent reason.

### 3.   Plaintiffs Cannot Establish That The Department Breached The Client Services Contract And/Or That Any Such Breach Proximately Caused Their Alleged Injuries

Under Washington law, a breach of contract is actionable if: (1) a contract imposed a duty upon a party; (2) the duty is breached; and (3) the breach proximately caused damage. *E.g., Northwest Indep. Forest Mfrs. v. Dep't of Labor and Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995). Here, the Department's contractual obligations ran exclusively to Aacres. There is no evidence that the Department failed to make payments to Aacres as required by the Client Services Contract, or breached any other duty arising therefrom. Quite to the contrary. *See*

---

[21] *See also* WAC 388-101-1220(2) (2007) ("service provider must ensure" that certain physical and safety requirements are met); WAC 388-101-1600 (2007) ("DSHS requires administrators of service providers to oversee all aspects of services delivered to clients …").

[22] The Department is not the guarantor of Aacres' conduct under the Client Services Contract. *See Bauer Decl.*, Ex. Q at 9 (¶¶ 10-11) (Dkt. 56)

DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT -- 3:09-CV-05443-FDB                    23                    ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

*discussion, supra* at 7-9.  Nor can Plaintiffs demonstrate that any such breach proximately caused

their alleged damages.  Plaintiffs' breach of contract claims thus fail as a matter of law.

**E.      Plaintiffs' State Law Tort Claims Should Be Dismissed For Failure To Comply With RCW 4.92.110**

Washington law requires filing of a notice of claim with the Office of Risk Management

in order to litigate a claim for monetary damages against the state, state agencies and state officials

on a state law tort theory.  RCW 4.92.100.  Further, RCW 4.92.110 provides that <u>no such action

shall be commenced</u> until 60 days have elapsed after the claim is presented to and filed with the

Office of Risk Management:

> <u>No action … shall be commenced against the state, or against any state officer, employee or volunteer, acting in such capacity, for damages arising out of tortious conduct until sixty days have elapsed after the claim is presented to and filed with the risk management division</u>.  […]

RCW 4.92.110 (emphasis added).

It is well-established that compliance with the tort-claim filing requirements of RCW

4.92 is a mandatory prerequisite to commencing a lawsuit against the State.  *See, e.g., Levy v.

State*, 91 Wn. App. 934, 942, 936 P.2d 1272 (1998); *Kleyer v. Harborview Medical Center,* 76

Wn. App. 542, 549 fn.6, 887 P.2d 468 (1995); *Jones v. University of Washington*, 62 Wn. App.

653, 660-61, 814 P.2d 1236 (1991), *review denied*, 118 Wn.2d 1026 (1992).

Here, Plaintiffs failed to file a statutory tort claim regarding the matters at issue in this

lawsuit.  *Agar Decl.*, ¶ 4 (Dkt. 59).  Plaintiffs' state law claims for "breach of fiduciary/special

relationship" and "public policy retaliation" must therefore be dismissed as a matter of law.

**F.      Plaintiffs' "Breach Of Fiduciary Duty/Special Relationship" Claims Are Without Merit**

Plaintiffs contend that the Department breached its "fiduciary duty/special relationship"

to Plaintiffs by "fail[ing] to enroll Dana in the COPES program, or to provide for her

continuing safety and wellbeing."  *Amended Complaint*, ¶¶ 91.-9.5 (Dkt. 31).

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

24

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

As a threshold matter, Washington law does not recognize the "fiduciary duty/special relationship" alleged by Plaintiffs, much less a private cause of action for an alleged breach thereof.  Generally, a tort duty may be based on either the common law or a statute.  *Degel v Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48-49, 914 P.2d 278 (1996).  However, state agencies are creatures of statute; thus, the role of creating new legal duties and obligations owed by government agencies is constitutionally delegated to the legislature, not the superior court.  *Murphy v. State,* 115 Wn. App. 297, 317, 62 P.3d 533, *rev. denied*, 149 Wn.2d 1035 (2003).  *See also* Wash. Const. art. II, § 26.  Here, Plaintiffs cannot cite to any common law or statutory basis for recognition of the "fiduciary duty/special relationship" they allege.[23]  Nor can Plaintiffs' cite any Washington authority recognizing the existence of a private cause of action for breach thereof under analogous circumstances.  Plaintiffs' "breach of fiduciary duty/special relationship" claim should be dismissed as a matter of law for this reason alone.

However, assuming *arguendo* that Washington law recognized a cause of action for "breach of fiduciary duty/special relationship" as alleged, Plaintiffs' claims should still be dismissed as a matter of law.  The Department did not terminate <u>any</u> services it was providing to Dana, and did not have the authority to "overrule" Aacres' termination decision.  Further, it is undisputed that the Department made extensive efforts to provide Dana with services <u>immediately</u> after Aacres' termination, and over the weeks, months and years that followed.  *See discussion, supra* at 7-9.  Based on the undisputed facts of this case and Plaintiffs deposition testimony, no reasonable juror could conclude that the Department breached any duty it may have owed to Plaintiffs.  Plaintiffs' "breach of fiduciary duty/special relationship" claims should be dismissed for this additional, independent reason.

---

[23] Washington law recognizes a special relationship and corresponding duty in two situations.  The first occurs when a governmental agency is in direct contact with the plaintiff and provides an express assurance of protection.  *See, e.g., Cummins v. Lewis Cy.*, 156 Wn.2d 844, 854, 133 P.3d 458 (2006).  The second is known as the "take charge" theory of liability, and is premised on an ongoing relationship with either the plaintiff or a third-party that is continuous or custodial in nature.  *See, e.g., Taggart v. State*, 118 Wn.2d 195, 217-219, 822 P.2d 243 (1992).  Neither type of special relationship is applicable here.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

25

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**G.     Plaintiffs' "Public Policy Retaliation" Claims Are Without Merit**

Plaintiffs assert a common law cause of action against the Department for retaliation in violation of public policy.  *Amended Complaint*, ¶¶ 8.1-8.7 (Dkt. 31).  Washington does not recognize any such cause of action related to an individual's First Amendment rights, separate and apart from an action under § 1983.  Plaintiffs' "public policy retaliation" claims should be dismissed for this reason alone.

Moreover, there is no evidence that the Department "retaliated" against Plaintiffs.  The Department did not terminate any services to Dana, and made extensive efforts to provide Dana with services <u>immediately</u> upon receipt of Aacres' termination notice and over the following weeks, months and years.  *See discussion, supra* at 7-9.  Further, <u>Judy testified unequivocally that the Department did not retaliate against Plaintiffs</u>.  *Bauer Decl.*, Ex. A at 69:1-20 (Dkt. 56).  Based upon the undisputed facts of this case and Plaintiffs' deposition testimony, no reasonable juror could conclude that the Department "retaliated" against Plaintiffs in violation of "public policy."  Plaintiffs' state law "public policy retaliation" claims thus fail as a matter of law.

**H.     The Department Is Not Vicariously Liable For Aacres' Alleged Tortious Conduct**

Under Washington law, to impose vicarious liability on the Department for Aacres' alleged tortious conduct, Plaintiffs must show that the Department "had the right to control the particular activities <u>from which the [tortious conduct] flowed</u>."  *Charlton v. Day Island Marina*, 46 Wn. App. 784, 792, 732 P.2d 1008 (1987) (emphasis added).  As stated in *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 729-30, 496 P.2d 571 (1972):

> [V]icarious liability of a principal for the negligent acts of any agent or servant is dependent upon whether the principal controls or has the right to control <u>the details of the physical movements</u> of the agent while such person is conducting the authorized transaction.  *See* Restatement (Second) of Agency § 250, comment a (1958).

(Emphasis in original.)  *See also Moss v. Vadman*, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1969) (to prove an agency relationship, plaintiffs also must show a "manifestation of consent by one

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

26

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control.").[24]

Here, <u>the decision to terminate Aacres' services was made by Aacres, not the Department</u>.  There is no evidence that the Department exercised any control or influence over Aacres with respect to this decision.  Reasonable minds thus can reach but one conclusion—the Department is not vicariously liable for Aacres' alleged tortious conduct as a matter of law.

## I.    Plaintiffs Are Not Entitled To Injunctive Relief

Plaintiffs seek injunctive relief to "ensure that DSHS remedy the problems created by Aacres' unauthorized termination of Dana's services[.]"  *Amended Complaint*, ¶ 10.3 (Dkt. 31).

To obtain permanent injunctive relief, a plaintiff must demonstrate not only a violation of law, but also: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *E.g., eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).  Injunctive relief is an "extraordinary remedy" which does not issue "as of course" or for "trifling" injuries.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982).

As discussed herein, Plaintiffs cannot establish that the State violated federal or state law in any pertinent respect.  Further, Plaintiffs cannot establish any of the four *eBay* elements based upon the undisputed facts of this case and their own deposition testimony.  *See discussion, supra* at 7-9.  Quite simply, this case does not warrant the "extraordinary remedy" of injunctive relief.  Plaintiffs' request for injunctive relief should be denied as a matter of law.

---

[24] As discussed *supra* at 20-21, the Department is not vicariously liable for Aacres' alleged violations of the ADA, Rehabilitation Act, Medicaid Act, and/or Plaintiffs' First and Fourteenth Amendment Rights.

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

27

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### IV.     CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against the Department with prejudice as a matter of law.

DATED this 14th day of April, 2011.

ROBERT M. MCKENNA
Attorney General

*/s/ Ian M. Bauer*
IAN M. BAUER, WSBA No. 35563
PETER HELMBERGER, WSBA No. 23041
Assistant Attorneys General
Attorneys for State Defendants

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

28

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300

**PROOF OF SERVICE**

I hereby certify that on April 14, 2011, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Darrell Cochran:            Darrell@pcvklaw.com

Dennis J. La Porte:        laporte@524law.com

/s/ Ian M. Bauer
IAN M. BAUER, WSBA No. 35563
Assistant Attorney General

DEPARTMENT'S MOTION FOR
SUMMARY JUDGMENT -- 3:09-CV-
05443-FDB

29

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia, WA 98504-0126
(360) 586-6300